UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIC WAKEFIELD,

    Plaintiff,

v.

JACOB BARTONI, and FRANKLIN COUNTY
JAIL ADMINISTRATOR,

    Defendants.

Case No. 21-cv-00867-JPG

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for consideration of a Motion for Summary Judgment filed by Defendant Jacob Bartoni ("Defendant" or "Bartoni") (Docs. 51, 52). Plaintiff Eric Wakefield ("Plaintiff" or "Wakefield"), proceeding *pro se*, opposes the motion. (Doc. 54). There is no reply on file and the time for doing so has passed. For the reasons set forth below, the motion shall be **GRANTED**. Wakefield's Complaint shall be dismissed with prejudice and judgment entered accordingly.

### BACKGROUND

This case involves a federal lawsuit for claims related to unconstitutional denial of medical care. Wakefield complains of the denial of medical care related to an aneurysm he suffered on the date he was taken into custody at Franklin County Jail ("Jail") in September 2019. Months later he suffered from a ruptured blood vessel. Following preliminary review of this matter under 28 U.S.C. § 1915A, the Court dismissed all defendants except Bartoni. Additionally, the Court added the Franklin County Jail Administrator as Wakefield requested injunctive relief in the form of an investigation into the matter. (Doc. 5). Therefore, one claim survived screening: Fourteenth and

Eighth Amendment claim against Bartoni for denying Wakefield medical treatment for ruptured blood vessel in his testicle on or around December 26, 2020. *Id.*

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Bartoni argues that evidence submitted shows that Wakefield and Bartoni had a momentary interaction while Wakefield was in a holding cell, and his conduct was not objectively unreasonable, and that Bartoni did not act purposefully, knowingly, or recklessly. Further, Bartoni argues that Wakefield was not suffering from an objectively serious medical condition.

### PLAINTIFF'S RESPONSE

Wakefield responds and states under a theory of "supervisory liability" defendants are liable for constitutional violations. Specifically, Wakefield argues defendants have no sufficient evidence to be granted summary judgment.

### FACTS

Wakefield was taken into custody on September 26, 2019. On December 26, 2020, Wakefield was in his cell at the Jail. He was in his top bunk in Cell No. 5 when at approximately 11:00 p.m. Around that time he scratched himself in the scrotum area and he noticed blood on his finger. He retrieved toilet paper and attempted to stop the bleeding. He first interacted with Gage Darnell.[1] Wakefield alleges that Darnell ordered him to come out of his cell, Cell No. 5, while trying to clamp the bleeding and he was taken to the booking area. Wakefield sat on the bench while Darnell went into the "Bubble" and when he came out, he advised Wakefield to put pressure on the area to stop the bleeding. Darnell then placed Wakefield in Holding Cell F1.

---

[1] In the Court's Screening Order, the Court noted that Wakefield referred to Gage Darnell in his statement of claim without naming his as a defendant. Therefore, the Court did and does not treat Gage Darnell as a defendant because Wakefield did not identify him as a case caption. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

Later that morning Bartoni spoke with Wakefield through the class in Holding Cell 1[2]. Wakefield told Bartoni that the bleeding stopped fifteen or twenty minutes prior to Bartoni speaking with him. Wakefield stated that this incident in the morning where Bartoni looked at him through the glass is the only contact he had with Bartoni regarding the issues in this case. Wakefield was deposed in this matter on November 22, 2022 and testified to the matters above.

**LEGAL STANDARD**

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp.*, LLC, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted).

Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]"

---

[2] Defendant's brief refers to this holding cell as Cell F1 and Cell 1. The Court believes this is a typographical error and refers to the same holding cell.

then a genuine dispute of material fact exists. *Zaya v. Snood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

### a. Fourteenth Amendment Claim

Plaintiff's claims are governed by the Fourteenth Amendment Due Process Clause, as he was a pretrial detainee at all relevant times of this case. *See Kingsley v. Hendrickson*, 576 U.S. 389, 395-96 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The Court applies a two-part analysis to Fourteenth Amendment claims related to inadequate medical care and/or conditions of confinement. *See Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). First, the Court examines whether the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 353). The second question is whether the defendant's conduct was objectively reasonable based on the totality of circumstances faced by the defendant. *Id*. Courts must afford deference to officials' decisions regarding the best ways to achieve legitimate penological goals. *Kingsley v*, 576 U.S. at 396-97.

The objective reasonableness inquiry "requires courts to focus on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 888 (7th Cir. 2018). Liability attaches only where the official "acted purposefully, knowingly, or perhaps even recklessly" when taking the actions at issue—negligence, or even gross negligence, will not suffice. *Miranda*, 900 F.3d at 352-53. The officers' response is objectively unreasonable if it is "not rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose."

*Kingsley*, 576 U.S. at 398 (cleaned up).

Although the result is the same, some Seventh Circuit decisions articulate a four-element analysis that requires the plaintiff to prove each of the following elements: (1) that the plaintiff suffered from an objectively serious medical condition, (2) the defendant committed a voluntary act regarding the plaintiff's serious medical need, (3) that act was done purposely, knowingly, or recklessly with respect to the risk of harm, and (4) that the defendant's conduct was objectively unreasonable under the circumstances. *Gonzalez v. McHenry County*, 40 F.4th 824, 827–28 (7th Cir. 2022). Reasonableness is determined from the perspective of a reasonable officer standing in the defendant's shoes. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015) ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight").

First, the Court considers whether this was an objectively serious medical condition when Bartoni contacted him. Here, when Bartoni had checked on him in the morning, Wakefield had told him that the bleeding had stopped. Even construing Wakefield's response liberally, it is unclear whether Wakefield properly responds to Bartoni's argument. The Court finds that by Wakefield's own testimony, as well as evidence in the record, Wakefield's condition was not objectively serious when Bartoni contacted him.

The Court finds that the record contains no evidence that Bartoni purposefully, knowingly, or recklessly in handling Wakefield's medical issues and it was not objectively unreasonable. In the light most favorable to Wakefield, the Court finds that Bartoni had a single contact with Wakefield later in the morning when he complained of the bleeding. Wakefield admits in his deposition that he told Bartoni that the bleeding had stopped fifteen or twenty minutes prior to

Bartoni talking to him from behind the glass in the cell. Because the bleeding had stopped, there was no additional need for further medical care and Wakefield does not show what more could have been done.

Wakefield responds and argues that under a theory of "supervisory liability" Bartoni could be liable for "knowledge and acquiescence of discriminatory criteria to classification decisions among detainees." (Doc. 54 at 5). He argues that where a supervisor "know[s] about conduct, facilitate it, approve, condone or turn a blind eye for fear of what they might see." This is a bit confusing as it is unclear who Wakefield is claiming is the supervisor and how that can defeat the arguments made on summary judgment. It also appears to be a legal conclusion as opposed to evidence in the record. In order for supervisory liability to attach under § 1983, Wakefield must offer evidence of, among other things, a constitutional deprivation. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). He must present evidence defendants violated the Constitution through their own conduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Therefore, Wakefield must demonstrate that the injury occurred at the direction of the supervisor's knowledge and consent and defendants acted "either knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (internal citations omitted). In support Wakefield cites legal citations, legal conclusions and no facts to demonstrate who the supervisor was, and any evidence of consent or knowledge. Because Wakefield shows no evidence or even factual allegations that any supervisor acted with knowledge or reckless indifference, Wakefield does not defeat summary judgment.

Wakefield next argues there are false medical reports by Gerrald Doris, and Patricia Jackson. He indicates that he submitted these to the "Courts" on August 11, 2020, and August 12, 2020 (Doc. 54 at 10). However, Wakefield filed this action on July 29, 2021, so the Court is unclear

what filed exhibits Wakefield is referring to. Wakefield has filed many separate actions within this district yet[3]. The Court will not sift through exhibits and pleadings from other cases to determine what exhibits Wakefield may be referring to, neither is it under any obligation to do so. A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

    Bartoni next states that Wakefield was subsequently allowed back in General Population, and refused medical care, therefore showing his condition was not objectively serious and Bartoni did not act recklessly. When allowed the opportunity to seek medical care on December 26, 2020, he refused it. Bartoni attaches the Refusal of Treatment Medical Release Form that Wakefield signed. (Doc. 51, Ex. B). Wakefield does not respond to this evidence. Therefore, the Court finds that Wakefield's condition was not objectively serious, and Bartoni did not act purposefully, knowingly, or recklessly in not treating Bartoni's bleeding that had stopped. Because Wakefield testified that when Bartoni interacted with him the morning after, his bleeding had stopped fifteen or twenty minutes prior, Bartoni did not act objectively unreasonably with Wakefield in putting him back in General Population. Additionally, Wakefield does not dispute that he refused medical treatment or signed the paperwork refusing medical treatment. Further, even providing Wakefield all reasonable inferences, even if Bartoni's acts amount to mere lack of due care, which the record

---

[3] *Wakefield v. Christopher Police Dept. et al* (Case No. 22-cv-01764-JPG); *Wakefield v. Franklin County Sheriff Dept. et al* (Case No. 22-cv-01766-JPG); *Wakefield v. SIU Credit Union et al* (Case No. 22-cv-01767-NJR); *Wakefield v. Franklin County Jail et al* (Case No. 22-cv-01768-JPG); *Wakefield v. District Attorney's Office et al* (22-cv-01769-DWD); *Wakefield v. Franklin County Courts et al* (Case No. 22-cv-1772-JPG).

shows Bartoni's acts were not, Defendant's conduct does not amount to a constitutional violation. *See, e.g., Kemp v. Fulton County*, 27 F.4th 491, 495–96 (7th Cir. 2022) (a state official's "mere lack of due care" does not "deprive an individual of life, liberty, or property under the Fourteenth Amendment.") (internal citations omitted).

### b. Qualified Immunity

"Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). However, because the Court has found that Wakefield has not demonstrated genuine dispute as to material facts to show that either defendant violated Wakefield's constitutional rights, the Court need not address whether Bartoni is subject to qualified immunity.

### c. Dismissal of Franklin County Jail Administrator

When the Court screened this complaint under 28 U.S.C. § 1915A, the Court added the name of the Franklin County Jail Administrator as the government official who is responsible for carrying out requested relief for Wakefield's request for an investigation. Injunctive relief is only proper when there is a continuing violation of federal law. *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)). When there is not, "injunctive relief is not part of a federal court's remedial powers." *Kress*, 694 F.3d at 894 (*quoting Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991)). Because the Court has found that there is no constitutional violation, there is no injunctive relief available for Wakefield. Therefore, the Court will drop the Franklin County Jail Administrator as a defendant in this case. FED. R. CIV. P. 21.

## CONCLUSION

The Court hereby **GRANTS** Defendant Jacob Bartoni's Motion for Summary Judgment (Doc. 51 and 52). Because the Court has found no federal or constitutional violation in this case, and therefore drops defendant Franklin County Jail Administrator, Eric Wakefield's complaint is **DISMISSED** with prejudice. The Court **DIRECTS** the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  April 13, 2023**

<u>/s/  J. Phil Gilbert</u>
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**